**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 18-cv-00969-CMA-MEH

ATLAS BIOLOGICALS, INC., a Colorado corporation,

      Plaintiff,

v.

THOMAS JAMES KUTRUBES,
BIOWEST, LLC, a Missouri limited liability company, and
WENDELL LEINWEBER,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART BIOWEST DEFENDANTS'
MOTION TO DISMISS, REJECTING UNITED STATES MAGISTRATE JUDGE'S
NOVEMBER 1, 2018 RECOMMENDATION, AND GRANTING IN PART AND
DENYING IN PLAINTIFF'S MOTION TO AMEND COMPLAINT**

---

      This matter is before the Court upon Defendants Biowest, LLC's and Wendell

Leinweber's (together, the "Biowest Defendants") Motion to Dismiss. (Doc. # 25.) The

Court, having reviewed all filings, exhibits, and relevant case law, and being fully

advised in the premises, grants in part and denies in part the Biowest Defendants'

Motion to Dismiss. The Court simultaneously rejects United States Magistrate Judge

Michael Hegarty's improperly issued Recommendation on the Motion to Dismiss (Doc.

# 49) and grants in part and denies in part Plaintiff Atlas Biologicals, Inc.'s Motion to

Amend Complaint (Doc. # 54).

# I.    BACKGROUND

## A.    PRIMARY SUIT

This action arises from a separate lawsuit currently pending before this Court, *Atlas Biologicals, Inc. v. Kutrubes*, No. 15-cv-00355-CMA-KMT (the "Primary Suit"). Plaintiff Atlas Biologicals, Inc. initiated both the Primary Suit and the action presently before the Court.  Plaintiff specializes in the production of bovine serum-based products used for cell culture and research.

In the Primary Suit, Plaintiff filed suit against Thomas Kutrubes (a Defendant in this matter), who began working for it as an intern in college and was ultimately promoted to be its National Sales Manager and a shareholder, and Kutrubes's companies, Peak Serum, Inc. and Peak Serum, LLC (non-parties to this matter).[1] Plaintiff alleges in the Primary Suit that, while Kutrubes was its employee and a shareholder, he illegally used Plaintiff's trademarks, trade secrets, and other confidential and proprietary information, and solicited its customers for his nascent competing business, Peak Serum.  Plaintiff asserts claims for trademark infringement under federal and Colorado law; unfair competition (false designation of origin) under federal law; misappropriation of trade secrets under the Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. §§ 7-74-101, *et seq.*; conversion; violations of the Colorado Consumer

---

[1] The Court takes judicial notice of the documents filed and settings held in the Primary Suit pursuant to Federal Rule of Evidence 201.  *See Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1298 n.2 (10th Cir. 2014); *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1212–13 (10th Cir. 2012).

Protection Act, Colo. Rev. Stat. §§ 6-1-105, *et seq.*; breach of fiduciary duty; and breach of contract.

The Court conducted a five-day bench trial on Plaintiff's claims from March 5, 2018, through March 9, 2018. During the trial, Leinweiber—not a party to the Primary Suit—testified on behalf of Kutrubes that Kutrubes's company, Peak Serum, distributes the product of Leinweber's employer, Biowest LLC. This Court has not yet decided the Primary Suit.

Approximately a month and a half after the trial concluded, on April 17, 2018, Plaintiff filed an "Emergency *Ex Parte*" Motion for Pre-Judgment Attachment and for a Temporary Restraining Order and Injunction Against Further Conveyances of Assets by Defendants. Plaintiff stated that on April 4, 2018, "Kutrubes purported to transfer all of his stock in Atlas Biologicals to Biowest LLC . . . whose president and CEO is Wendell Leinweber" and argued that Kutrubes's attempted conveyance of this stock was "an effort to hinder, delay, or defraud creditors and warrants the imposition of a writ of pre-judgment attachment against his Atlas Biologicals stock." Plaintiff attached as exhibits (1) a letter from Kutrubes's counsel to Plaintiff's counsel, informing them that Kutrubes transferred his stock "to a third party, Biowest, LLC, effective April 4, 2018," and that Leinweber was the contact person for Biowest, LLC; and (2) a Transfer and Conveyance of Common Stock, dated April 4, 2018, and signed by Kutrubes.

The Court heard testimony and argument on Plaintiff's Motion for Pre-Judgment Attachment on April 19, 2018. At the outset, the Court made clear that the hearing was "limited specifically to whether [it could] issue a writ of attachment as to whatever

3

interests there is that [Kutrubes] had in that 7 percent interest" in Plaintiff's shares. It was not concerned with whether Kutrubes's shares had actually transferred to Biowest, LLC because "that [was] a matter for a separate action." The Court explained that it did not have any jurisdiction over Biowest, LLC or Leinweber. After hearing testimony from Kutrubes and argument from counsel, the Court announced that it would "issue an order of pre-judgment attachment as to whatever interest remains in [Kutrubes] for the 7 percent of stock that he owns in Atlas." It clarified that it did not know what interest remained and "that would not be decided by [the Court] unless [the parties] file[d] a separate action in this Court for either declaratory judgment or for further undoing the fraudulent conveyance."

The Court issued the Writ of Attachment on April 24, 2018, pursuant to Colorado Rule of Civil Procedure 102. It ordered the Sheriff of Larimer County to "attach and safely keep any stock of [Plaintiff] owned by [Kutrubes] which may be found within the County of Larimer." Plaintiff subsequently informed the Court that it had served the Writ of Attachment on Kutrubes on May 3, 2018, and that it had "surrendered [Kutrubes's] stock certificates to the Larimer County Sheriff on May 9, 2018."

## B. THIS ACTION

Plaintiff initiated the action presently before the Court on April 25, 2018, one day after the Court issued the Writ of Attachment in the Primary Suit, seeking to "void the purported transfer of stock" from Defendant Kutrubes to Defendant Biowest, LLC. (Doc. # 1 at 1.) Plaintiff asserts four claims for relief: (1) "declaratory judgment that the purported transfer is void;" (2) avoidance of the purported transfer under the Colorado

4

Uniform Fraudulent Transfer Act ("CUFTA"), Colo. Rev. Stat. § 38-8-105(1)(a), as "actual fraud;" (3) avoidance of the purported transfer under CUFTA, Colo. Rev. Stat. §§ 38-8-105(1)(b) or -106(1), as "constructive fraud;"[2] and (4) civil conspiracy between Defendants "to fraudulently convey" Defendant Kutrubes's stock to the Biowest Defendants.  (*Id.* at 13–18.)  Defendant Kutrubes filed an Answer to the Complaint on June 1, 2018.  (Doc. # 20.)

The Biowest Defendants filed the Motion to Dismiss presently before the Court on June 25, 2018.  (Doc. # 25.)  They argue that Plaintiff's claims against them must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction or, alternatively, pursuant to Rule 12(b)(6) for failure to state a claim.  (*Id.*)  Plaintiff responded to the Biowest Defendants' Motion to Dismiss on July 23, 2018, rebutting some of the Biowest Defendants' arguments in a brief rife with typographical errors.  (Doc. # 30.)  The Biowest Defendants replied in support of their Motion to Dismiss on August 6, 2018.  (Doc. # 33.)

United States Magistrate Judge Michael Hegarty issued a Report and Recommendation on the Biowest Defendants' Motion to Dismiss on November 1, 2018, advising the Court that it should dismiss in their entireties Plaintiff's First and Fourth

---

[2] Plaintiff's Complaint also cites Colo. Rev. Stat. § 38-8-108(1)(b) in its third claim for relief— after it cites Colo. Rev. Stat. § 38-8-105(1)(b) in the heading for that claim.  (Doc. # 1 at 16.) The Court presumes that Plaintiff's citation to Section 108(1)(b) is in error.  Section 108(1)(b) concerns an attachment against the asset transferred, which Plaintiff does not request in the present action.

Claims and should dismiss Plaintiff's Second and Third Claims as alleged against Defendant Leinweber.[3]  (Doc. # 49.)

The Biowest Defendants objected to the Magistrate Judge's Recommendation on November 15, 2018, reprising their argument that the Court lacks jurisdiction to adjudicate Plaintiff's claims.  (Doc. # 52.)  Plaintiff responded in support of Magistrate Judge Hegarty's jurisdictional analysis on November 29, 2018.  (Doc. # 56.)

Plaintiff also filed an Objection to the Recommendation on November 15, 2018. (Doc. # 53.)  Plaintiff argues that the Recommendation must be rejected for three reasons: (1) the Magistrate Judge was "without statutory authority" to issue a Recommendation; (2) Plaintiff has standing to request a declaratory judgment; and (3) the Magistrate Judge's analysis of the Third Claim is flawed.  (*Id.* at 1–2.)  The Biowest Defendants filed a Response to Plaintiff's Objection on November 29, 2018 (Doc. # 55), to which Plaintiff replied on December 6, 2018 (Doc. # 58).

Also on November 15, 2018, Plaintiff filed a Motion to Amend Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).  (Doc. # 54.)  It asserts that its requested amendment corrects defects Magistrate Judge Hegarty discussed in the Recommendation and will thereby "simplify[] the matters for the [C]ourt to decide on [the Biowest Defendants'] [M]otion to [D]ismiss."  (*Id.* at 3–4.)  The Biowest Defendants responded to Plaintiff's Motion to Amend on December 6, 2018, arguing that Plaintiff's

---

[3] Before Magistrate Judge Hegarty issued his Recommendation on the Biowest Defendants' Motion to Dismiss, Plaintiff filed a Motion for Partial Summary Judgment, seeking a declaratory judgment (via its First Claim) that "the April 4, 2018 purported transfer of [its] stick by Defendant [Kutrubes] is void."  (Doc. # 36.)  The motion is ripe for the Court's review.  *See* (Doc. ## 46– 48.)  The Court will rule on Plaintiff's Motion for Partial Summary Judgment in due time.

"protracted failure to correct" its Complaint "after being appraised of" a "substantive

pleading error" "months earlier" "goes unexplained and is devoid of any showing of good

faith mistake or neglect."  (Doc. # 57 at 2.)  The Biowest Defendants also argue that

Plaintiff's proposed amendment would be futile because the Court would still not have

jurisdiction over the action.  (*Id.* at 2–3.)  Plaintiff replied in support of its Motion to

Amend Complaint on December 20, 2018.  (Doc. # 63.)

## II.     THE MAGISTRATE JUDGE'S RECOMMENDATION

### A.     APPLICABLE LEGAL STANDARDS

A district court may "designate a magistrate judge to conduct hearings, including

evidentiary hearings, and to submit to a judge of the court proposed findings of fact and

recommendations for the disposition, by [the] judge of the court," of a motion to dismiss,

as well as other dispositive motions.  28 U.S.C. § 636(b)(1)(b); *see also* Fed. R. Civ. P.

72(b).  The Local Rules of Practice for this District similarly provide that "[**o]n reference

or order by a district judge**," a magistrate judge may "hold hearings and make

recommendations on dispositive matters."  D.C.COLO.LCivR 72.1(c)(3) (emphasis

added).  Neither federal law nor the Local Rules explicitly authorize a magistrate judge

to make a recommendation on a dispositive motion without a referral from the district

court.

### B.     ANALYSIS

The Court begins its analysis by rejecting the Magistrate Judge's

Recommendation (Doc. # 49) because Magistrate Judge Hegarty was without authority

to make a recommendation.  This Court referred the Biowest Defendants' Motion to

Dismiss to the Magistrate Judge one day after it was filed (Doc. # 26), but approximately two months later, on August 16, 2018, the Court withdrew its referral of the Motion to the Magistrate Judge (Doc. # 35). Thus, when Magistrate Judge Hegarty issued his Recommendation on the Biowest Defendants' Motion to Dismiss on November 1, 2018, the Motion to Dismiss was not referred to him. The Magistrate Judge erred by issuing the Recommendation on a dispositive motion that had not been referred to him,[4] and the Court, therefore, rejects the Recommendation. (Doc. # 49.)

## III.    THE BIOWEST DEFENDANTS' MOTION TO DISMISS

### A.    APPLICABLE LEGAL STANDARDS

The Biowest Defendants seek dismissal of Plaintiff's claims against them pursuant to Rule 12(b)(1) on the grounds that the Court lacks subject matter jurisdiction over the action. (Doc. # 25 at 1.) Should the Court determine that it has subject matter jurisdiction over Plaintiff's claims, the Biowest Defendants alternatively argue that the action must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. (*Id.* at 8.)

#### 1.    Rule 12(b)(1)

Dismissal pursuant to Rule 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the complaint. "The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*24, 518 F.3d 1186, 1189 (10th Cir. 2008). Rule 12(b)(1)

---

[4] The Court notes that this was an honest mistake caused by an erroneously entered "Court only" docket entry on November 26, 2018, that re-referred the Biowest Defendants' Motion to Dismiss to the Magistrate Judge. It appeared to Magistrate Judge Hegarty and to this Court— but not to the parties—that the Motion to Dismiss had been re-referred to him.

challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)); *see Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). When reviewing a facial attack, a court takes the allegations in the complaint as true but, when reviewing a factual attack, the court does not presume the truthfulness of the complaint's factual allegations and may consider affidavits or other documents to resolve jurisdictional facts. *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995). The Biowest Defendants' Motion to Dismiss launches a facial attack on the Court's subject matter jurisdiction. *See* (Doc. # 25 at 2.) The Court therefore accepts as true Plaintiff's allegations in its Complaint for purposes of this Order.

2.    Rule 12(b)(6)

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). "Where a complaint pleads facts

that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (citation omitted).

## B.    ANALYSIS

### 1.    <u>Dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction</u>

The Biowest Defendants argue that Plaintiff's action must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction for three reasons: (1) there is "no ancillary jurisdiction;" (2) there is "prior subject matter jurisdiction in another matter;" and (3) Plaintiff lacks standing to challenge the validity of the stock sales agreement.  (Doc. # 25 at 1–8.)  The Court addresses each argument in turn.

#### a.    *Ancillary jurisdiction*

Plaintiff asserts that the Court has ancillary jurisdiction in this matter pursuant to 28 U.S.C. § 1367.[5]  (Doc. # 1 at 3.)  The Biowest Defendants argue that the Court does not have ancillary jurisdiction over the action because it is "separated" from the Primary Suit, relies on state claims, and lacks "an independent federal jurisdiction basis."  (Doc. # 25 at 2–7.)

The doctrine of ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them."  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375,

---

[5] Section 1367 provides:
> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).

378 (1994).  Generally speaking, federal courts exercise ancillary jurisdiction "for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent . . . and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."  *Id.* (internal citations omitted); *see K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 966 (9th Cir. 2014).

The first and well-known purpose—ancillary jurisdiction over factually interdependent claims—is codified in Section 1367.  *Torlakson*, 762 F.3d at 966 (citing *Peacock v. Thomas*, 516 U.S. 349, 354 n.5 (1996)).  Despite Plaintiff's initial assertions that the Primary Suit "arises out of the original jurisdiction of this [C]ourt, to hear federal questions" and that "[t]he claims alleged in this case are so related to claims in the [Primary Suit] that they form the same case or controversy" (Doc. # 1 at 3), this purpose is not relevant here.  *See* 13 Charles Alan Wright, *et al.*, Federal Practice & Procedure § 3523.2 (3d ed. 2018) (Section 1367 concerns supplemental jurisdiction, which "applies to **claims** asserted in a pending federal-court case").

Instead, this case "involves the second, less common purpose—ancillary jurisdiction over collateral proceedings."  *Torlakson*, 762 F.3d at 966.  The Court of Appeals for the Tenth Circuit has explained that this form of "[a]ncillary jurisdiction rests on the premise that a federal court acquires jurisdiction of a case or controversy in its entirety.  Incident to the disposition of the principal issues before it, a court may decide collateral matters necessary to render complete justice."  *Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th Cir. 1982); *see* Wright, *supra*, § 3523.2 ("[A]s an incident to the full

12

disposition of the matter, [the district court] may hear collateral proceedings when necessary to allow it to vindicate its role as a tribunal"). Without jurisdiction to enforce its judgments, "the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." *Peacock*, 516 U.S. at 356. In defining a court's power pursuant to ancillary jurisdiction, the Supreme Court has "approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the **prejudgment avoidance of fraudulent conveyances**." *Id.* at 356–57 (emphasis added) (collecting cases).

The Court is satisfied that it has ancillary jurisdiction over Plaintiff's First, Second, and Third Claims for relief. In these three claims, Plaintiff seeks to avoid an allegedly fraudulent transfer of stock to Defendant Biowest, LLC from Defendant Kutrubes, against whom Plaintiff seeks a judgment in the Primary Suit. *See* (Doc. # 1 at 13–16.) The Supreme Court approved of such a use of ancillary jurisdiction in *Dewey v. West Fairmont Gas Coal Co.*, 123 U.S. 329, 332–33 (1887), and more recently, reaffirmed its approval of ancillary jurisdiction in *Peacock*, 516 U.S. 356. Although the Tenth Circuit has yet to rule on this particular issue, it has stated in dicta that ancillary jurisdiction may be exercised in a judgment-enforcement action "to reach and collect assets of the judgment debtor held by a third party." *Ellis v. All Steel Const., Inc.*, 389 F.3d 1031, 1034 (10th Cir. 2004). Moreover, the majority of the circuits to address this question have concluded that "post-judgment actions to avoid fraudulent conveyances fall within

the court's ancillary jurisdiction." *Reyes-Fuentes v. Shannon Produce Farm, Inc.*, No 6:08-cv-59, 2012 WL 1557368, at *2 (S.D. Ga. May 2, 2012) (collecting cases); *see, e.g.*, *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001). Under this well-established case law, Plaintiff's First, Second, and Third Claims are within the scope of the ancillary enforcement jurisdiction of this Court. The Court denies the Biowest Defendants' Motion to Dismiss to the extent it argues otherwise.[6]

However, the Court does not have ancillary jurisdiction over Plaintiff's Fourth Claim, in which Plaintiff alleges a civil conspiracy between Defendants to "cause additional expenditure of attorney fees, costs, and other professional fees by Plaintiff . . . and its majority shareholders" and seeks damages. (Doc. # 1 at 16–18.) As the Court explained above, the Supreme Court has "reserved the use of ancillary jurisdiction in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments." *Peacock*, 516 U.S. at 356. The Supreme Court has explicitly declined to extend the reach of ancillary jurisdiction "beyond attempts to execute, or to guarantee eventual executability of, a federal judgment." *Id.* at 357. It has "cautioned against the exercise of jurisdiction over proceedings that are 'entirely new and original' . . . or where 'the relief sought is of a different kind or on a different

---

[6] The thrust of the Biowest Defendants' argument about the ancillary jurisdiction of this Court assumes that Plaintiff asserts ancillary jurisdiction for its first purpose—resolution of factually interdependent claims. *See* (Doc. # 25 at 2–7.) The Biowest Defendants assert, for example, that "it is doubtful that there is sufficient factual dependence between the federal claims raised in the [Primary Suit] with those state claims raised in the second lawsuit to justify extension of ancillary jurisdiction." (*Id.* at 6.) However, as the Court already explained, Plaintiff is actually asserting ancillary jurisdiction for its second purpose, to address collateral matters necessary for the enforcement of its judgments. The Biowest Defendants do not convincingly address ancillary jurisdiction in the context of its second purpose.

principle' than that of the prior decree." *Id.* at 358 (internal citations omitted).  In this case, as in *Peacock*, *id.* at 358–59, Plaintiff's allegation of civil conspiracy and its accompanying prayer for damages is an "entirely new and original" theory of liability. Accordingly, the Court cannot assert ancillary jurisdiction over Plaintiff's Fourth Claim. The Court grants in part the Biowest Defendants' Motion to Dismiss and dismisses Plaintiff's Fourth Claim pursuant to Rule 12(b)(1) for want of subject matter jurisdiction.

> b.    *In rem jurisdiction over the shares*

The Biowest Defendants alternatively argue that the Primary Suit "has prior subject matter jurisdiction" over the stock owned or previously owned by Defendant Kutrubes, as evidenced by the Court's issuance of the Writ of Attachment in the Primary Suit.  (Doc. # 25 at 7.)  They contend that this Court therefore "cannot assume subject matter jurisdiction [over the stock] in this matter." (*Id.* at 7–8.)  The Court disagrees.

*In rem* jurisdiction over a *res* may be established by a writ of attachment. *Cooper v. Reynolds*, 77 U.S. 308, 317 (1870). "'[W]hen a court of competent jurisdiction has obtained possession, custody, or control of the disputed *res* in an *in rem* action, that possession cannot be disturbed by any other court.'" *Cassity v. Pitts*, 995 F.2d 1009, 1011 (10th Cir. 1993) (quoting *Key v. Wise*, 629 F.2d 1049, 1059 (5th Cir. 1980)).  The court that first acquired jurisdiction over the *res* is vested "with the power to hear and determine all controversies relating thereto." *Farmers' Loan & Trust Co. v. Lake St. Elevated R. Co.*, 177 U.S. 51, 61 (1900).

That this Court first exercised jurisdiction over the *res*—the shares in Plaintiff owned or formerly owned by Defendant Kutrubes—by issuing the Writ of Attachment in

the Primary Suit and that this Court now exercises jurisdiction over the same *res* in this action does not run afoul any of the aforementioned tenets of jurisdiction. Because this Court first acquired jurisdiction over the *res* in the Primary Suit, this Court (the same court) is vested "with the power to hear and determine all controversies relating thereto." *See Farmers' Loan & Trust Co.*, 177 U.S. at 61. The Court is doing no more than exercising its power to hear and determine all controversies related to the *res* by hearing Plaintiff's claims in this action.

The Biowest Defendants' brief argument and citations do not persuade the Court otherwise. *See* (Doc. # 25 at 7–8.) Its citations are unavailing and easily distinguished from the case presently before this Court, as all three cited cases involved an action in federal court and an action in state court that concerned a common *res*. *See* (*id.*) (citing, *e.g.*, *Eggleston v. State of Colo.*, 588 F. Supp. 1352, 1354 (D. Colo. 1984)). A federal court and a state court are clearly two different courts. In this case, the two actions—the Primary Suit and this matter—proceed before the **same** court.

   c. *Plaintiff's standing to challenge the stock sales agreement between Defendants Kutrubes and Biowest, LLC*

Plaintiff's First Claim is for a declaratory judgment that the purported transfer of Defendant Kutrubes's shares from Defendant Kutrubes to Defendant Biowest, LLC "is void and of no effect." (Doc. # 1 at 13–14.)

This claim is apparently brought under Colorado's Uniform Declaratory Judgments Law, Colo. Rev. Stat. §§ 13-51-101, *et seq.*, and Colorado Rule of Civil Procedure 57.[7]  Colorado law provides:

> Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Colo. Rev. Stat. § 13-51-106; *see* Colo. R. Civ. P. 57 (same).  To have standing to bring a declaratory judgment action under Colorado law, "a plaintiff must assert a legal basis on which a claim for relief can be grounded.  The plaintiff must allege an injury in fact to a legally protected or cognizable interest." *Farmers Ins. Exch. v. Dist. Court for the Fourth Judicial Dist.*, 862 P.2d 944, 947 (Colo. 1993) (citing *Bd. of Cty. Comm'rs, La Plata Cty. v. Bowen/Edwards Assocs.*, 830 P.2d 1045 (Colo. 1992)).  Importantly, a declaratory judgment action is only appropriate "when the rights asserted by the plaintiff are present and cognizable ones. . . .  If entered, a declaratory judgment would **effect a change in the plaintiff's present rights or status**." *Id.* (emphasis added).  A declaratory judgment proceeding "may not be invoked to resolve a question which is non-existent, even though it can be assumed that at some future time such question may arise." *Taylor v. Tinsley*, 330 P.2d 954, 955 (Colo. 1958).

---

[7] As the Biowest Defendants concede, Plaintiff's First Claim is necessarily a state claim "since federal ancillary jurisdiction is cited in the Complaint by the Plaintiff as the only basis for this Court's jurisdiction over Plaintiff's claims."  (Doc. # 25 at 2.)

The Biowest Defendants' final argument for dismissal under Rule 12(b)(1) is that "[t]he Court lacks jurisdiction over Plaintiff's state declaratory judgment claim, its first cause of action, in that [Plaintiff] was not a party to the stock sales agreement between [Defendants] Kutrubes and Biowest and therefore does not have an interest in the contract nor standing to bring the claim." (Doc. # 25 at 8.) The Court disagrees.

Plaintiff has standing to assert a declaratory judgment claim under Colorado law because the declaratory judgment that it seeks—that purported transfer of stock from Defendant Kutrubues to Defendant Biowest, LLC "is void and of no effect," (Doc. # 1 at 14)—would effect a change in its present rights or status. *See Farmers Ins. Exch.*, 862 P.2d at 947. Plaintiff's present status as the issuer of its stock is affected by whether the stock at issue has been validly transferred to Defendant Biowest, LLC for two reasons. First, if the stock has been validly transferred to Defendant Biowest, LLC and other preconditions are met, Plaintiff is obligated by Colorado law to register the transfer. *See* Colo. Rev. Stat. § 4-8-401. Defendant Biowest, LLC's counsel has already requested that Plaintiff do so. *See* (Doc. # 1-13.) Second, the Court's Writ of Attachment in the Primary Suit affects Plaintiff's rights and obligations as the issuer of stock if the stock transfer was invalid and Defendant Kutrubes still owned the stock when the Writ was issued on April 24, 2018. Pursuant to the Writ and under the impression that the stock was not validly transferred to Defendant Biowest, LLC, Plaintiff has already "surrendered [Kutrubes's] stock certificates to the Larimer County Sheriff on May 9, 2018."

For the aforementioned reasons, the Court dismisses only Plaintiff's Fourth

Claims in its entirety pursuant to Rule 12(b)(1) for want of jurisdiction.

> 2.  Dismissal pursuant to Rule 12(b)(6) for failure to state a claim

The Biowest Defendants argue that all four of Plaintiff's claims fail to state a

claim for relief and must be dismissed pursuant to Rule 12(b)(6).  (Doc. # 25 at 9–18.)

Because the Court has already dismissed Plaintiff's Fourth Claim under Rule 12(b)(1), it

need not consider whether the Fourth Claim must also be dismissed under Rule

12(b)(6).  It therefore only assesses whether Plaintiff's First, Second, and Third Claims

plausibly allege a claim for relief.

> a.  *Plaintiff's First Claim: declaratory judgment*

Plaintiff's First Claim requests a declaratory judgment under Article 8 of the

Colorado Uniform Commercial Code ("UCC"), Colo. Rev. Stat. §§ 4-8-101, *et seq.*

(Doc. # 1 at 13–14.)  Its claim for a declaratory judgment is premised on the fact that

"[p]ursuant to [Plaintiff's] bylaws, [its] stock must be certificated."  *See* (Doc. # 30 at 13;

Doc. # 1-1 at 11.)

The UCC provides that "[d]elivery of a certificated security to a purchaser occurs

when" either "[t]he purchaser acquires possession of the security certification" or

"[a]nother person . . . either acquires possession of the security certificate on behalf of

the purchaser or, having previously acquired possession of the certificate,

acknowledges that it holds for the holds for the purchaser."  Colo. Rev. Stat. § 4-8-

301(a)(1)–(2).  For the purchaser to have "'control' of a certificated security in registered

form," the certificated security must have been delivered to the purchaser and either

"[t]he certificate [must have been] indorsed to the purchaser" by the seller or "[t]he

certificate [must have been] registered in the name of the purchaser, upon original issue

or registration of the transfer by the issuer."  Colo. Rev. Stat. § 4-8-106(b).  *See Mortg.*

*Inv. Corp. v. Battle Mountain Corp.*, 93 P.3d 557, 560 (Colo. App. 2003) ("Article 8

provides that a purchaser acquires rights in a certificated security when the purchaser

takes possession of the security certificate.")

Plaintiff's First Claim fails to state a claim against Defendant Leinweber.  Plaintiff

does not once mention Defendant Leinweber in its First Claim.  *See* (Doc. # 1 at 13–

14.)  It is Defendant Biowest, LLC that is the purported transferee/purchaser of

Defendant Kutrubes's stock, and any declaratory judgment that the transfer was void

would pertain only to Defendants Biowest, LLC and Kutrubes.  Thus, Plaintiff's First

Claim must be dismissed pursuant to Rule 12(b)(6) as to Defendant Leinweber.

However, Plaintiff does state a claim for relief against Defendant Biowest, LLC.

Plaintiff plausibly alleges that the transfer of stock from Defendant Kutrubes to

Defendant Biowest, LLC was ineffectual under the UCC because Defendant Biowest,

LLC does not possess a stock certificate and Plaintiff has not registered any certificate

in Defendant Biowest, LLC's name.  *See* (Doc. # 1 at 11); Colo. Rev. Stat. §§ 4-8-

301(a)(1)–(2), 4-8-106(b).

Moreover, the Biowest Defendants' argument that Defendant Kutrubes's stock

was equitably transferred to Defendant Biowest, LLC does not defeat Plaintiff's claim

under the UCC.  *See* (Doc. # 25 at 11–13.)  Though the Biowest Defendants are correct

that Colorado recognizes equitable assignment of corporate stock and that the adoption of the UCC does not abrogate the principle allowing such equitable transfer, *see Mortg. Inv. Corp.*, 93 P.3d at 560; (Doc. # 25 at 11–13), "equitable title claims are recognized in Colorado only where the rights of third parties would not be affected," *see Mortg. Inv. Corp.*, 93 P.3d at 560.  Plaintiff may be such a third party whose rights are affected by an equitable transfer of its stock.  Accordingly, the Court rejects at this procedural juncture the Biowest Defendant's argument that Plaintiff fails to state a claim for a declaratory judgment.

> *b.    Plaintiff's Second Claim: actual fraud*

In its Second Claim, Plaintiff alleges that Defendant Kutrubes sought to transfer his shares "with the actual intent to hinder, delay, or defraud [Plaintiff]" and brings a claim against Defendants pursuant to Colo. Rev. Stat. § 38-8-105(1)(a) for "actual fraud."  (Doc. # 1 at 14–15.)  For relief, Plaintiff seeks "avoidance of the purported transfer" pursuant Section 38-8-108(1)(a).  (*Id.* at 15.)  Alternatively, "to the extent [Defendant] Kutrubes['s] stock is not recoverable," Plaintiff requests a "money judgment against the purported transferee, [Defendant Biowest, LLC], equal to one and one half times the value of [Defendant] Kutrubes['s] stock pursuant to [Colo. Rev. Stat.] § 38-8-108(1)(c)."  (*Id.*)  Plaintiff does not seek a money judgment against Defendant Leinweber.  *See* (*id.*)

Section 105(1)(a) of CUFTA states that a "transfer made or obligation incurred by a debtor is **fraudulent** as to a creditor, whether the creditor's claim arose before or after the transfer was made . . . , if the debtor made the transfer or incurred the obligation . . .

[w]ith **actual intent to hinder, delay, or defraud** any creditor of the debtor." Colo. Rev. Stat. § 38-8-105(1)(a) (emphasis added). With respect to relief, a creditor may obtain either "[a]voidance of the transfer . . . to the extent necessary necessary to satisfy the creditor's claim" or "a judgment for one and one-half the value of the asset transferred or for one and one-half the amount necessary to satisfy the creditor's claim, whichever is less, together with the creditor's actual costs." Colo. Rev. Stat. §§ 38-8-108(1)(a), -108(1)(c).

The Court first determines that Plaintiff's Second Claim fails to state a claim as to Defendant Leinweber. As the Biowest Defendants note, *see* (Doc. # 25 at 15–16), all of Plaintiff's allegations in the Second Claim concern "Kutrubes['s] actual intent to hinder, delay, or defraud [Plaintiff]" and Defendant Biowest, LLC's role as the transferee (Doc. # 1 at 14–15). Defendant Leinweber is not mentioned at all in the Second Claim. *See* (*id.*) Because Plaintiff's Second Claim lacks any allegations regarding Defendant Leinweber's actual intent to defraud Plaintiff, it fails to state a claim against him and must be dismissed as to Defendant Leinweber pursuant to Rule 12(b)(6).

Second, the Court concludes that Plaintiff's Second Claim survives the Biowest Defendants' Motion to Dismiss to the extent it is alleged against Defendant Biowest, LLC. Section 38-8-108(1)(c) of CUFTA allows for a judgment "against a person other than the debtor" if that person "also acts with wrongful intent as defined in [S]ection 38-8-105(1)(a)." Colo. Rev. Stat. § 38-8-108(1)(c). The Court is satisfied that Plaintiff alleges Defendant Biowest, LLC acted with wrongful intent. In determining intent under Section 38-8-105(1)(a), "consideration may be given, among other factors, to whether: .

. . (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; . . . (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; . . . [and] (j) The transfer occurred shortly before or shortly after a substantial debt was incurred." Colo. Rev. Stat. § 38-8-105(2). These factors, as applied to Plaintiff's Complaint, plausibly allege that Defendant Biowest, LLC acted with actual intent to defraud Plaintiff. For example, Defendant Kutrubes transferred his share to Defendant Biowest, LLC shortly after the trial of the Primary Suit, in which Plaintiff sued him, and Defendant Biowest, LLC, through Defendant Leinweber, was aware of the trial and the likely judgment against Defendant Kutrubes in the Primary Suit. *See* Colo. Rev. Stat. § 38-8-105(2)(d). Additionally, Plaintiff alleges that Defendant Biowest, LLC agreed to only the "value received" as consideration for Defendant Kutrubes's transfer of stock, making it difficult to determine whether the value of the consideration was reasonably equivalent to the value of the stocks transferred. *See* Colo. Rev. Stat. § 38-8-105(2)(h). Construing these allegations in the light most favorable to Plaintiff, the Court concludes that Plaintiff has adequately alleged actual fraud under CUFTA against Defendant Biowest, LLC.

        c.    *Plaintiff's Third Claim: constructive fraud*

Plaintiff's Third Claim alleges "constructive fraud" in Defendant Kutrubes's transfer of stocks, citing several sections of CUFTA, including Section 38-8-105(1)(b). (Doc. # 1 at 16); *see* (Doc. # 30 at 10.) As to relief, Plaintiff seeks avoidance of the transfer pursuant to Sections 38-8-108(1)(b) or 38-8-106(1). (Doc. # 1 at 16.)

Alternatively, "to the extent Kutrubes's stock is not recoverable," it requests "a judgment against the purported transferee, [Defendant Biowest LLC], equal to the value of [Defendant] Kutrubes's stock pursuant to [Colo. Rev. Stat.] § 38-8-109(2)(c)." (*Id.*) Plaintiff does not seek any relief from Defendant Leinweber.

Section 105(1)(b) of CUFTA states that a "transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . . , if the debtor made the transfer . . . (b) Without receiving a reasonably equivalent value in exchange for the transfer . . . , and the debtor: . . . (II) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." Colo. Rev. Stat. § 38-8-105(1)(b). CUFTA provides that a creditor may seek relief in the form of "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim" or "[a]n attachment or other provisional remedy against the asset transferred . . . in accordance with the procedure prescribed by the Colorado Rules of Civil Procedure." Colo. Rev. Stat. § 38-8-108(1)(a)–(b). If the transfer is avoidable under Section 38-8-108(1)(a), the creditor may alternatively "recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less." Colo. Rev. Stat. § 38-8-109(2). Such a judgment may be entered against "[t]he first transferee of the asset" or "[a]ny subsequent transferee other than a good-faith transferee." *Id.*

At the outset, the Court observes that the citations to CUFTA's remedy provisions in Plaintiff's Complaint are significantly flawed. First, Plaintiff seeks avoidance of Defendant Kutrubes's transfer of stocks "under [Colo. Rev. Stat.] §§ 38-8-

108(1)(b) or 106(1) or both," *see* (Doc. # 1 at 16), but neither of those sections provide for avoidance of a transfer. Avoidance of transfer is provided for by Section 38-8-108(1)(a), which Plaintiff does not cite in its Third Claim. Second, Plaintiff alternatively seeks a judgment against Defendant Biowest, LLC "equal to the value of [Defendant] Kutrubes's stock pursuant to [Colo. Rev. Stat.] § 38-8-109(2)(c)," *see* (Doc. # 1 at 16), but Section 38-8-109(2)(c) does not exist. Rather, Sections 38-9-109(a)–(b) allow for judgment for the value of the asset transferred. Though the Court does not take these mistakes lightly, it is satisfied that Complaint adequately gives Defendants fair notice of what the claim is. *See Twombly*, 550 U.S. at 555; Fed. R. Civ. P. 8(a)(2). Additionally, the Biowest Defendants do not ask the Court to dismiss the Third Claim because of these citation errors. *See* (Doc. # 25 at 16–17.)

The Court's analysis of the Third Claim is similar to that of the Second Claim. Plaintiff's Third Claim must be dismissed against Defendant Leinweber because the claim does not contain any allegations about his conduct; he is not mentioned at all. *See* (Doc. # 1 at 16.) The Third Claim therefore fails to state a claim against him and must be dismissed as to Defendant Leinweber pursuant to Rule 12(b)(6).

However, the Court is satisfied that Plaintiff has adequately alleged that Defendant Biowest, LLC may be liable for a judgment for the value of the stocks transferred pursuant to Section 38-8-109(2). Section 38-8-109(2) states that an aggrieved creditor "may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less," and that this judgment may be entered against "[t]he first transferee of the asset." Colo. Rev. Stat.

§ 38-8-109(2), -109(2)(a).  Plaintiff alleges—and Defendants do not dispute—that

Defendant Biowest, LLC was the first transferee of Defendant Kutrubes's stock transfer.

*See* (Doc. # 1 at 6.)  The Third Claim therefore states a claim for relief against

Defendant Biowest, LLC.

## IV.    PLAINTIFF'S MOTION TO AMEND COMPLAINT

### A.    APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its

pleading with the court's leave and directs the court to "freely give leave when justice so

requires."  Fed. R. Civ. P. 15(a)(2).  The Supreme Court has explained:

> If the underlying facts and circumstances relied upon by a plaintiff may be
> a proper subject of relief, he ought to be afforded an opportunity to test his
> claim on the merits.  In the absence of any apparent or declared reason—
> such as undue delay, bad faith or dilatory motive on the part of the movant,
> repeated failure to cure deficiencies by amendments previously allowed,
> undue prejudice to the opposing party by virtue of allowance of the
> amendment, futility of amendment, etc.—the leave sought should, as the
> rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  Whether to grant leave to amend a

pleading "is within the discretion of the trial court."  *First City Bank, N.A. v. Air Capitol

Aircraft Sales*, Inc., 820 F.2d 1127, 1132 (10th Cir. 1987) (quoting *Zenith Radio Corp. v.

Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)).

### B.    ANALYSIS

Plaintiff "proposes to amend its [C]omplaint to correct typographical errors, to

omit Defendant . . . Leinweber as a defendant in this action, and to delete the cause of

action for civil conspiracy asserted in the [C]omplaint."  (Doc. # 54 at 2.)  In light of the

Court's dismissal of Defendant Leinweber and of the Fourth Claim (for civil conspiracy)

discussed above, Plaintiff's request to omit Defendant Leinweber and to delete the cause of action for civil conspiracy are denied as moot. The Court need only address whether Plaintiff may amend its Complaint to correct typographical errors.

The Court grants Plaintiff leave to amend the Complaint to correct the typographical errors in its Third Claim for relief. *See* (Doc. # 1 at 16.) As the Court described in Section III(B)(2)(c) above, Plaintiff cites inapplicable and non-existent subsections of CUFTA in its Third Claim. However, the Court does not believe these errors prejudiced Defendants, who had notice of the nature of the Third Claim since the filing of the Complaint (as evidenced by the Biowest Defendants' substantive argument for dismissal of the Third Claim, *see* (Doc. # 25 at 16–17)).

The Biowest Defendants' Response to Plaintiff's Motion to Amend Complaint does not convince the Court otherwise. Their primary argument that amendment of the Complaint would "fail[] to cure the fatal problem of a lack of subject matter jurisdiction in this Court over any of [Plaintiff's] claims" is moot, given that the Court rejected that argument and determined that it has subject matter jurisdiction over the Third Claim, the claim in which Plaintiff seeks to correct typographical errors, in Section III(B)(1) of this Order. *See* (Doc. # 57 at 2–4.)

The Court thus grants in part Plaintiff's Motion to Amend Complaint to the extent that Plaintiff seeks to correct typographical errors in its Third Claim. It denies the Motion to Amend Complaint in all other respects.

## V.     CONCLUSION

For the foregoing reasons, it is ORDERED:

1. The Court REJECTS the November 1, 2018 Recommendation of United States Magistrate Judge Hegarty (Doc. # 49) as issued without this Court's referral;

2. The Court GRANTS IN PART and DENIES IN PART the Biowest Defendants' Motion to Dismiss (Doc. # 25);

   a. The Motion to Dismiss is GRANTED to the extent that it seeks dismissal of the Fourth Claim (civil conspiracy) pursuant to Rule 12(b)(1).  The Fourth Claim is dismissed in its entirety;

   b. The Motion to Dismiss is GRANTED to the extent that is seeks dismissal of Defendant Leinweber pursuant to Rule 12(b)(6).  Defendant Leinweber is dismissed from this action;

   c. The Motion to Dismiss is DENIED in all other respects.  The First, Second, and Third Claims against Defendants Kutrubes and Biowest, LLC remain;

3. The Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion to Amend Complaint (Doc. # 54);

   a. Within ten (10) days of this Order, Plaintiff shall file an Amended Complaint with corrections to the typographical errors in the Third Claim. No other amendments to the Complaint shall be made;

   b. Within fourteen (14) days of Plaintiff's filing of an Amended Complaint, Defendants shall file their answers;

c. The Motion to Amend is DENIED AS MOOT to the extent that it seeks to strike Defendant Leinweber and the Fourth Claim.

DATED: March 14, 2019

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge