IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-00969-CMA-MEH

ATLAS BIOLOGICALS, INC., *a Colorado corporation*,

    Plaintiff/Counter-Defendant,

v.

THOMAS JAMES KUTRUBES, *an individual*,

    Defendant,

BIOWEST, LLC, *a Missouri limited liability company*,

    Defendant/Counter-Plaintiff

---

**ORDER GRANTING PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

This matter is before the Court on Plaintiff Atlas Biologicals, Inc.'s Second Motion for Partial Summary Judgment ("the Motion") (Doc. # 80). The briefing is complete. (Doc ## 82, 87, 91.) The Court, having reviewed all filings, exhibits, and relevant case law, and being fully advised in the premises, grants Plaintiff's Second Motion for Partial Summary Judgment.

    **I.**    **FACTUAL AND PROCEDURAL BACKGROUND**

The Court incorporates herein its recounting of the facts from its March 14, 2019 Order. (Doc. # 65.) It details factual and procedural developments only to the extent necessary to address the instant Motion.

**A.     PRIMARY SUIT**

This action arises from a separate lawsuit that was tried before this Court, *Atlas Biologicals, Inc. v. Kutrubes*, Civil Action No. 15-cv-00355-CMA-KMT (the "Primary Suit"). Plaintiff Atlas Biologicals, Inc. ("Atlas") initiated both the Primary Suit and the action presently before the Court. Atlas specializes in the production of bovine serum-based products used for cell culture and research.

In the Primary Suit, Atlas filed suit against Thomas Kutrubes (a Defendant in this matter) and Kutrubes's companies, Peak Serum, Inc. and Peak Serum, LLC (non-parties to this matter).[1] Plaintiff alleged in the Primary Suit that while Kutrubes was its employee and a shareholder he illegally used Plaintiff's trademarks, trade secrets, and other confidential and proprietary information, and solicited its customers for his nascent competing business, Peak Serum. Plaintiff asserted claims for trademark infringement under federal and Colorado law; unfair competition (false designation of origin) under federal law; misappropriation of trade secrets under the Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. §§ 7-74-101, *et seq.*; conversion; violations of the Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-105, *et seq.*; breach of fiduciary duty; and breach of contract.

The Court conducted a five-day bench trial on Plaintiff's claims from March 5, 2018, through March 9, 2018. Approximately a month and a half after the trial

---

[1] The Court takes judicial notice of the documents filed and settings held in the Primary Suit pursuant to Federal Rule of Evidence 201. *See Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1298 n.2 (10th Cir. 2014); *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1212–13 (10th Cir. 2012).

concluded, on April 17, 2018, Plaintiff filed an "Emergency *Ex Parte*" Motion for Pre-Judgment Attachment and for a Temporary Restraining Order and Injunction Against Further Conveyances of Assets by Defendants. Plaintiff stated that on April 4, 2018, "Kutrubes purported to transfer all of his stock in Atlas Biologicals to Biowest LLC . . . whose president and CEO is Wendell Leinweber" ("the Purported Transfer") and argued that Kutrubes's attempted conveyance of this stock was "an effort to hinder, delay, or defraud creditors and warrants the imposition of a writ of pre-judgment attachment against his Atlas Biologicals stock." Plaintiff attached as exhibits (1) a letter from Kutrubes's counsel to Plaintiff's counsel, informing them that Kutrubes transferred his stock "to a third party, Biowest, LLC, effective April 4, 2018," and that Leinweber was the contact person for Biowest, LLC ("Biowest"); and (2) a Transfer and Conveyance of Common Stock, dated April 4, 2018, and signed by Kutrubes.

The Court heard testimony and argument on Plaintiff's Motion for Pre-Judgment Attachment on April 19, 2018. At the outset, the Court made clear that the hearing was limited specifically to whether it could issue a writ of attachment as to whatever interest Kutrubes had in the 7 percent of Atlas stock he owned. It was not concerned with whether Kutrubes's shares had actually transferred to Biowest because "that [was] a matter for a separate action." The Court explained that it did not have any jurisdiction over Biowest or Leinweber. After hearing testimony from Kutrubes and argument from counsel, the Court announced that it would "issue an order of pre-judgment attachment as to whatever interest remains in [Kutrubes] for the 7 percent of stock that he owns in Atlas." It clarified that it did not know what interest remained and "that would not be

decided by [the Court] unless [the parties] file[d] a separate action in this Court for either declaratory judgment or for further undoing the fraudulent conveyance."

The Court issued the Writ of Attachment on April 24, 2018, pursuant to Colorado Rule of Civil Procedure 102. It ordered the Sheriff of Larimer County to "attach and safely keep any stock of [Plaintiff] owned by [Kutrubes] which may be found within the County of Larimer." Plaintiff subsequently informed the Court that it had served the Writ of Attachment on Kutrubes on May 3, 2018, and that it had "surrendered [Kutrubes's] stock certificates to the Larimer County Sheriff on May 9, 2018."

On September 23, 2019, the Court issued its Findings of Fact and Conclusions of Law in the Primary Suit. (Doc. # 158.) The Court entered judgment in favor of Plaintiff and against Kutrubes on Plaintiff's claims for federal trademark infringement, Colorado common law trademark and trade name infringement, misappropriation of trade secrets, and breach of fiduciary duty. (*Id.* at 55.) The Court awarded $2,048,180.50 in damages to Plaintiff (*id.*), and final judgment was entered against Kutrubes (Doc. # 159).

**B.    THE INSTANT ACTION**

Plaintiff initiated the action presently before the Court on April 25, 2018, one day after the Court issued the Writ of Attachment in the Primary Suit. Plaintiff seeks "declaratory relief pursuant Fed. R. Civ. P. 57 to void the purported transfer of stock [from Kutrubes to Biowest] under Article 8 of the Colorado Uniform Commercial Code or, in the alternative, to avoid and recover a fraudulent transfer pursuant to the Colorado Uniform Fraudulent Conveyances Act C.R.S. §§ 38-8-101 *et seq.* (CUFTA)." (Doc. # 70 at 1.) Plaintiff asserts three claims for relief: (1) "declaratory judgment that the purported

4

transfer is void" under Article 8 of the Colorado Uniform Commercial Code ("UCC"), Colo. Rev. Stat. §§ 4-8-101, *et seq.*; (2) avoidance of the purported transfer under the Colorado Uniform Fraudulent Transfer Act ("CUFTA"), Colo. Rev. Stat. § 38-8-105(1)(a), as "actual fraud;" and (3) avoidance of the purported transfer under CUFTA, Colo. Rev. Stat. §§ 38-8-105(1)(b) or -106(1), as "constructive fraud." (*Id.* at 13–17.)

Plaintiff filed the instant Motion on April 19, 2019, wherein Plaintiff moves the Court to find that the Purported Transfer is void under the UCC and grant summary judgment on its first claim for declaratory relief. (Doc. # 80.) Defendant Kutrubes filed his response on May 10, 2019. (Doc. # 82.) Kutrubes urges the Court to find that the transfer was valid because Defendants substantially complied with the UCC and an equitable transfer of stock occurred. (*Id.* at 5–9.) Defendant Biowest filed its response on May 10, 2019. (Doc. # 83.) Biowest argues that Plaintiff's Motion should be denied because, *inter alia*, Article 8 of the UCC is irrelevant to the transfer of ownership of stock and an equitable transfer of stock occurred. *See generally* (*id.*). Plaintiff subsequently filed its Amended Combined Reply (Doc. # 87) and a Supplement to Plaintiff's Second Motion for Partial Summary Judgment (Doc. # 91) with leave of Court.

C.  **STATEMENT OF FACTS**

The parties do not dispute the following material facts, which are pertinent to the Court's determination of the instant Motion.

Prior to the Primary Suit, Atlas issued approximately 7% of its stock to Defendant Kutrubes. (Doc. # 80 at 2); (Doc. # 82 at 2). As of April 3, 2018, Kutrubes owned approximately 44,681 shares of Atlas stock. (Doc. # 80-1 at 75.) On April 4, 2018,

5

Defendant Kutrubes purportedly transferred all of his shares of common stock, representing 7% of the outstanding shares of Atlas to Biowest, LLC ("the Purported Transfer"). (Doc. # 80-1 at 22.) A cover letter dated April 5, 2018, drafted by Defendant Kutrubes's attorney in the Primary Action stated, in part, "Mr. Kutrubes has transferred [his] stock to a third party, Biowest, LLC, effective April 4, 2018." (*Id.* at 22–23.) Enclosed with the cover letter was a "Transfer and Conveyance of Common Stock" and an "Irrevocable Stock Transfer Power." (*Id.* at 22–25.) Biowest did not receive delivery of an indorsed certificate for Kutrubes's shares. (Doc. # 80 at 4); (Doc. # 83 at 8). Atlas had not created stock certificates for Kutrubes's shares at the time of the Purported Transfer. (Doc. # 80-1 at 75.) Atlas subsequently created stock certificates for Kutrubes's shares. (*Id.*)

Upon notice of the Purported Transfer, Atlas immediately sought a writ of attachment in the Primary Suit. (Doc. # 80 at 5); (Doc. # 82 at 3); (Doc. # 83 at 8). The Court issued a writ of attachment with respect to the shares, as described above.

On June 18, 2019, Kutrubes submitted a written shareholder's request to inspect Atlas's corporate records pursuant to Colo. Rev. Stat. §§ 7-116-101 and -102. (Doc. # 91-1 at 1–6.) The shareholder's request is signed by Kutrubes and states that Kutrubes is a current shareholder of Atlas, owns 52,689 shares of Atlas stock, and has been a shareholder of Atlas for 9 years. Kutrubes represented therein that he sought, in part, to "review and ascertain the value of [his] shares." (*Id.* at 2.) Kutrubes attached thereto copies of Atlas stock certificates in his name. (*Id.* at 4–6.)

## II.  LEGAL STANDARDS

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbot Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 118 F.3d 837, 839 (10th Cir. 1997).

When reviewing motions for summary judgment, a court may not resolve issues of credibility and must view the evidence in the light most favorable to the nonmoving party—including all reasonable inferences from that evidence. *Id*. However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int' l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id*. In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claims; rather, the movant need simply point the court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 644, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant meets its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy this burden. *Id*. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence from which a rational trier of fact could find for the nonmoving party." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id*. Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### III. DISCUSSION

Plaintiff moves for summary judgment on its claim for a declaratory judgment that the Purported Transfer is void and of no effect under Article 8 of the UCC and that the Writ of Attachment in the Primary Suit attached Kutrubes's stock in Atlas. The Court finds that Kutrubes's Atlas stock was uncertificated, that Defendants did not meet the requirements for transfer of uncertificated stock under Article 8 of the UCC, and that an equitable transfer did not occur. Accordingly, the Court grants the Motion.

### A.   ATLAS'S STOCK WAS AN UNCERTIFICATED SECURITY

Plaintiff moves this Court to find that Kutrubes's shares were certificated securities because Atlas's bylaws require that its stock be certificated. (Doc. # 80-1 at 11–12.) Under the UCC, a "certificated security" is a security that is represented by a

8

certificate. Colo. Rev. Stat. § 4-8-102(4). An "uncertificated security" is a security that is not represented by a certificate. Colo. Rev. Stat. § 4-8-102(18). Atlas admits that it created stock certificates for Kutrubes's shares only after the Purported Transfer took place. (Doc. # 80-1 at 75.) Therefore, Kutrubes's shares were not represented by a certificate at the time of the Purported Transfer. Accordingly, they were uncertificated securities under the UCC.

**B.     THE PURPORTED TRANSFER DID NOT MEET THE REQUIREMENTS FOR TRANSFER OF OWNERSHIP OF THE STOCK UNDER THE UCC**

   1.     Article 8 of the UCC Applies

Biowest argues that delivery under the UCC is not required to transfer legal ownership of stock in the instant case and posits that delivery occurs following the sale of a security. *See* (Doc. # 83 at 21) ("Registration and delivery of shares is not relevant to the question of ownership."). Upon review of the statute and the case law, the Court concludes that Article 8 of the UCC governs the Purported Transfer and its delivery requirements must be satisfied for legal ownership of stock to transfer.

Corporate shares are "securities" for purposes of Article 8 of the UCC, which governs the transfer of corporate shares. *Mortg. Investments Corp. v. Battle Mountain Corp.*, 93 P.3d 557, 560 (Colo. App. 2003) (citing Colo. Rev. Stat. §§ 4–8–101, *et seq.*). Pursuant to the reasoning of the Colorado Supreme Court and the Colorado Court of Appeals, Article 8 of the UCC governs acquisition of legal ownership of uncertificated shares of a corporation and failure to comply with Article 8's requirements results in no legal interest in those shares. *Cf. Mortg. Investments Corp. v. Battle Mountain Corp.*, 70 P.3d 1176, 1187 (Colo. 2003) (Article 8 "governs acquisition of legal ownership of

certificated shares of a corporation and generally requires that a purchaser receive the security certificate or certified stock of the corporation."), *as modified on denial of reh'g* (June 9, 2003); *Mortg. Investments Corp.*, 93 P.3d at 560 (affirming trial court's conclusion that individual who purportedly purchased shares of the defendant corporation but failed to obtain stock certificates "did not acquire ownership" of the property because he "did not comply with Article 8"). Under Article 8 of the UCC, "delivery" is used "to describe the formal steps necessary for a purchaser to acquire a direct interest in a security." Colo. Rev. Stat. § 4-8-301 cmt. 1.

### 2. Defendants Did Not Meet the Requirements for Transfer of Legal Ownership Under Article 8

Therefore, the Court looks to the requirements for delivery of uncertificated securities under Article 8 to determine whether Kutrubes transferred legal ownership of his Atlas stock to Biowest. The UCC provides that delivery of an uncertificated security to a purchaser occurs when either of the following conditions is satisfied:

> (1) The issuer registers the purchaser as the registered owner, upon original issue or registration of transfer; or
>
> (2) Another person, other than a securities intermediary, either becomes the registered owner of the uncertificated security on behalf of the purchaser or, having previously become the registered owner, acknowledges that it holds for the purchaser.

Colo. Rev. Stat § 4-8-301 (2019).

It is undisputed that Atlas is the issuer of Kutrubes's stock and that it did not register Biowest as the registered owner. (Doc. # 80 at 6); (Doc. # 82 at 4); (Doc. # 83 at 9). Although Biowest argues that Atlas had a duty to register Biowest as the registered owner under Colo. Rev. Stat. § 4-8-401 (Doc. # 83 at 18–21), Colo. Rev. Stat

10

§ 4-8-301 asks whether the issuer actually registered the purchaser as the registered owner, not whether the issuer was obligated to register the purchaser under § 4-8-401. Such a registration did not occur in this case. Therefore, pursuant to the plain language of the statute, the first condition was not met.

As to the second condition, Plaintiff asserts that this condition also fails because it is undisputed that another person did not become the registered owner of the stock on behalf of Biowest; nor did another person, having previously become the registered owner, acknowledge that it holds for the purchaser. (Doc. # 80 at 13); (Doc. # 87 at 4). The Court agrees. Rick Paniccia, President of Atlas, stated in his declaration that "Atlas has not received any statement from Kutrubes that Kutrubes holds his stock for the benefit of Biowest." (Doc. # 80-1 at 78.) Further, Mr. Kutrubes's June 18, 2019 shareholder's request indicated that Mr. Kutrubes was the owner of the stock and the request contained no suggestion that Kutrubes held the stock for Biowest.[2] Based on the evidence before the Court, the second condition was not met.[3]

---

[2] In his request, Kutrubes stated that he presently owned stock in Atlas, had been a shareholder for 9 years, and sought to "ascertain the value of [his] shares." (Doc. # 91-1 at 1–6.) He attached thereto copies of stock certificates in his name for the Atlas stock at issue in this case.

[3] Defendants failed to address in their responses whether another person either became the registered owner of the uncertificated security on behalf of Biowest or, having previously become the registered owner, acknowledged that it holds for Biowest. If Defendants had addressed this issue, they may have argued that the April 5, 2018 letter from Kutrubes's litigation counsel to Atlas constituted "another person . . . having previously become the registered owner, acknowledg[ing] that it holds for the purchaser." (Doc. # 80-1 at 22.) The Court finds that the April 5, 2018 letter indicated that Kutrubes no longer held the stock; it did not indicate that Kutrubes was now holding the stock for the benefit of Biowest. See (*id.*) ("Mr. Kutrubes was owner of 7% of outstanding shares"; "Mr. Kutrubes has transferred that stock to a third party, Biowest, LLC"; "You may contact Mr. Leinweber [of Biowest] as necessary regarding the Atlas shares"). Therefore, the Court finds that the letter did not constitute such an acknowledgment.

Therefore, Defendants failed to satisfy either condition for delivery of an uncertificated security under Article 8 of the UCC. As a result, ownership of Kutrubes's stock did not transfer to Biowest. *Cf. Mortg. Investments Corp.*, 93 P.3d at 560.

## C. EQUITABLE TRANSFER OF SHARES DID NOT OCCUR

Defendants' arguments that the stock equitably transferred to Biowest is unavailing. *See* (Doc. # 25 at 11–13). Although Defendants are correct that Colorado recognizes equitable transfer of corporate stock and that the adoption of the UCC does not abrogate the principle allowing such equitable transfer, "equitable title claims are recognized in Colorado only where the rights of third parties would not be affected." *See Mortg. Investments Corp.,* 93 P.3d at 560. In *Mortg. Investments Corp.*, the Colorado Court of Appeals affirmed the trial court's decision not to apply the equitable transfer doctrine because a third party that held a deed of trust would have been affected. As a result, ownership of the property at issue did not transfer to the purported transferee.

In the instant case, Atlas has obtained a pre-judgment Writ of Attachment of the shares in question, and the Court has determined that Kutrubes was the legal owner of the shares at the time of the attachment. Thus, application of the equitable transfer doctrine would affect the rights of a third party, Atlas. As such, and in keeping with Colorado precedent, the Court declines to apply the equitable transfer doctrine in this case.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- Plaintiff's Second Motion for Partial Summary Judgment is GRANTED:

- - the Purported Transfer between Defendants Kutrubes and Biowest is void and of no effect under Article 8 of the UCC;
  - the Writ of Attachment issued in *Atlas Biologicals, Inc. v. Kutrubes*, Civil Action No. 15-cv-00355-CMA-KMT, attached Defendant Kutrubes's Atlas stock; and
- summary judgment is hereby entered in favor of Plaintiff Atlas Biologicals, Inc., and against Defendants Thomas James Kutrubes and Biowest, LLC, on Plaintiff's first claim for relief—i.e., its claim for declaratory judgment that the Purported Transfer is void.

DATED: July 23, 2020

BY THE COURT:

*[signature]*
CHRISTINE M. ARGUELLO
United States District Judge